No. 25-20168

# In the United States Court of Appeals for the Fifth Circuit

DOBBIN PLANTERSVILLE WATER SUPPLY CORPORATION,
A TEXAS WATER SUPPLY CORPORATION,
*Plaintiff-Appellant*,

v.

MONTGOMERY COUNTY MUNICIPAL UTILITY DISTRICT NUMBER 180,
*Defendant-Appellee*.

On Appeal from the United States District Court
For the Southern District of Texas, Houston Division
Case No. 4:23-CV-1583

## BRIEF OF APPELLANT

William W. Allensworth (SBN 24073843)
wallensworth@allensworthlaw.com
Karly A. Houchin (SBN 24096601)
khouchin@allensworthlaw.com
Jordan T. Rhodes (SBN 24126750)
jrhodes@allensworthlaw.com
**ALLENSWORTH & PORTER, LLP**
303 Colorado St., Suite 2800
Austin, Texas  78701
(512) 708-1250 - Telephone
(512) 708-0519 – Facsimile

**COUNSEL FOR PLAINTIFF-
APPELLANT**

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Cir. R. 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**Defendant-Appellee:** Montgomery County Municipal Utility District Number 180

**Counsel for Defendant-Appellee:** Gunnar Seaquist
Joshua Katz
Bickerstaff, Heath, Delgado & Acosta, L.L.P.
Austin, Texas

**Plaintiff-Appellant:** Dobbin Plantersville Water Supply Corporation

**Counsel for Plaintiff-Appellant:** William W. Allensworth
Karly Houchin
Jordan Rhodes
Allensworth & Porter, L.L.P.
Austin, Texas

**Other Interested Parties:** SIG Magnolia L.P.

***Counsel for SIG Magnolia L.P.:***
Gunnar Seaquist
Joshua Katz
Bickerstaff, Heath, Delgado & Acosta, L.L.P.
Austin, Texas

i

Signorelli Company

**_Counsel for Signorelli Company_:**
Gunnar Seaquist
Joshua Katz
Bickerstaff, Heath, Delgado & Acosta, L.L.P.
Austin, Texas

/s/ William W. Allensworth

William W. Allensworth
Attorney of Record for Plaintiff-Appellant
Dobbin Plantersville Water Supply
Corporation

ii

## STATEMENT REGARDING ORAL ARGUMENT

Dobbin Plantersville Water Supply Corporation requests oral argument because this appeal involves complex issues of first impression arising out of the Court's previous rulings in *Green Valley Special Util. Dist. v. City of Schertz, Texas*, 969 F.3d 460 (5th Cir. 2020) and *Dobbin Plantersville Water Supply Corp. v. Lake*, 108 F.4th 320 (5th Cir. 2024). The appeal also concerns the interplay between federal and state law, and how that implicates Article III standing, generally.

# **TABLE OF CONTENTS**

**Page**

CERTIFICATE OF INTERESTED PERSONS......................................................i

STATEMENT REGARDING ORAL ARGUMENT.............................................. iii

TABLE OF CONTENTS ..............................................................................iv

TABLE OF AUTHORITES ...........................................................................vi

JURISDICTIONAL STATEMENT ................................................................ 1

STATEMENT OF THE ISSUES ................................................................... 2

STATEMENT OF THE CASE....................................................................... 3

SUMMARY OF THE ARGUMENT ............................................................... 8

ARGUMENT ............................................................................................. 9

I.   Standard of Review................................................................................ 9

II.   7 U.S.C. § 1926(b) and Texas Water Code § 13.2541................................. 10

III.   The District Court Erred by Granting MUD 180's Motion to Dismiss........ 15

   A.   The District Court's Order ................................................................. 15

   B.   Dobbin Has the Legal Right to Serve ................................................. 17

      (1)   Section 1926(b) prevents the Decertification Order from interfering with Dobbin's vested monopoly rights................................................................................. 17

      (2)   Section 1926(b) conflict preempts Tex. Water Code § 13.2541 and the Decertification Order, and both are *void ab initio*................................................................ 23

   C.   The District Court Disregarded Independent Bases for Standing.................................................................................. 24

IV.    The District Court's Order Undermines the Congressional Intent of
§ 1926(b) and Creates Conflict Between *Green Valley* and *Dobbin I*.......... 27

V.    The District Court Erred if it Relied on Unstated Grounds.......................... 30

CONCLUSION.............................................................................................. 31

CERTIFICATE OF SERVICE ............................................................... 34

CERTIFICATE OF COMPLIANCE ...................................................... 34

## **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Alexander v. Cockrell*,
  294 F.3d 626 (5th Cir. 2002) ......................................................................23

*Antilles Cement Corp. v. Fortuno*,
  670 F.3d 310 (1st Cir. 2012).......................................................................23

*Armstrong v. Exceptional Child Ctr., Inc.*,
  575 U.S. 320 (2015).....................................................................................20

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).......................................................................................9

*Bell v. Hood*,
  327 U.S. 678 (1946)......................................................................................20

*Burford v. Sun Oil*,
  319 U.S. 315 (1943)......................................................................................30

*City of Madison v. Bear Creek Water Ass'n*,
  816 F.2d 1057 (5th Cir. 1987) ...............................................................11, 12

*Clark v. Tarrant Cnty.*,
  798 F.2d 736 (5th Cir. 1986).......................................................................22

*Crystal Clear Special Util. Dist. v. Jackson*,
  142 F.4th 351 (5th Cir. 2025) ........................................................ 14, 24, 29

*Crystal Clear Special Util. Dist. v. Marquez*,
  316 F. Supp. 3d 965 (W.D. Tex. 2018) .......................................................23

*Deer Creek Water Corp. v. City of Okla. City*,
  82 F.4th 972 (10th Cir. 2023) .....................................................................30

*Dobbin Plantersville Water Supply Corp. v. Lake*,
  108 F.4th 320 (5th Cir. 2024) ............................................................. passim

*Dobbin Plantersville Water Supply Corp. v. Lake*,
 No. 1:21-CV-00612-RP, 2022 U.S. Dist. LEXIS 123567
 (W.D. Tex. July 13, 2022), *R. & R. adopted*, 2022 U.S. Dist.
 LEXIS 184887 (W.D. Tex. Aug. 4, 2022) .................................................. 4, 23, 28

*Doe v. MySpace, Inc.*,
 528 F.3d 413 (5th Cir. 2008) ................................................................. 9

*Ex parte Young*,
 209 U.S. 123 (1908) ...................................................................... 21, 27

*Glenpool Util. Serv. Auth. v. Creek Cnty. Rural Water Dist., No. 2*,
 861 F.2d 1211 (10th Cir. 1988) ............................................................. 12

*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*,
 313 F.3d 305 (5th Cir. 2002) ............................................................... 10

*Green Valley Special Util. Dist. v. City of Schertz, Texas*,
 969 F.3d 460 (5th Cir. 2020) ........................................................ passim

*Miller v. Northwest Harris Cnty. MUD No. 24*,
 No. 4:19-CV-04240, 2020 WL 5632415, 2020 U.S. Dist. LEXIS
 172004 (S.D. Tex. 2020) ..................................................................... 22

*Monell v. Dep't of Soc. Services*,
 436 U.S. 658 (1978) ........................................................................ 22

*Mt. Healthy City Sch. Bd. of Educ. v. Doyle*,
 429 U.S. 274 (1977) ........................................................................ 22

*N. Alamo Water Supply Corp. v. City of San Juan*,
 90 F.3d 910 (5th Cir. 1996) ........................................................... 12, 13

*OPF Enters. v. Evanston Ins. Co.*,
 4:31-CV-01835, 2021 WL 4710948, 2021 U.S. Dist. LEXIS
 194812 (S.D. Tex. 2021) ..................................................................... 10

*Pittsburg Cnty. Rural Water Dist. No. 7 v. City of McAlester*,
 358 F.3d 694 (10th Cir. 2004) ...................................................... 12, 13, 21

*Post Oak Special Util. Dist. v. City of Coolidge*,
 1996 U.S. App. LEXIS 42741 (5th Cir. 1996) ............................................. 12

*Pub. Util. Comm'n of Tex. v. Sw. Water Services, Inc.*,
 636 S.W.2d 262 (Tex. App.—Austin 1983, *writ ref'd n.r.e.*) ..............................31

*R.R. Comm'n of Tex. v. Pullman Co.,*
 312 U.S. 496 (1941)...............................................................................................30

*Rafuse v. Advanced Concepts & Techs., Int'l, LLC,*
 2024 WL 428736, 2024 U.S. App. LEXIS 24372 (5th Cir. 2024)........................9

*Rural Water Sys. #1 v. City of Sioux Ctr.,*
 967 F. Supp. 1483 (N.D. Iowa 1997)........................................................... 13, 17

*Steel Co. v. Citizens for a Better Env't,*
 523 U.S. 83 (1998) ...................................................................................... 16, 20

*T. B. by & through Bell v. Nw. Indep. Sch. Dist.,*
 980 F.3d 1047 (5th Cir. 2020) .................................................................................9

*Tercero v. Tex. Southmost Coll. Dist.,*
 989 F.3d 291 (5th Cir. 2021) ................................................................................22

*Time Warner Cable, Inc. v. Hudson,*
 667 F.3d 630 (5th Cir. 2012) ................................................................................25

*Verizon Maryland, Inc. v. Public Serv. Comm'n of Md.,*
 535 U.S. 635 (2002)...............................................................................................26

*Warth v. Seldin,*
 422 U.S. 490 (1975)...............................................................................................16

*Xenia Rural Water Dist. v. City of Johnston,*
 467 F. Supp. 3d 696 (S.D. Iowa 2020) ................................................................17

**Statutes**

7 U.S.C. § 1926(a) ................................................................................. 3, 6, 17

7 U.S.C. § 1926(b) ................................................................................. passim

 28 U.S.C. § 1291 ......................................................................................1

28 U.S.C. § 1331 ......................................................................................1

28 U.S.C. § 2201 ...................................................................................1, 6

28 U.S.C. § 2202 .................................................................................................1, 6

42 U.S.C. § 1983 ................................................................................... passim

Tex. Water Code § 13.242(a)...................................................... 17, 18, 19, 24

Tex. Water Code § 13.254(a-1)(3)(C) .................................................................31

Tex. Water Code § 13.2541 ...................................................... passim

Tex. Water Code § 13.2541(b-1) ...................................................................30

Tex. Water Code § 13.2541(c).........................................................................14

Tex. Water Code § 13.2541(d) ..................................................... 14, 23

**Rules**

7 C.F.R. § 1782.14(a)...........................................................................11

7 C.F.R. § 1782.14(b)...........................................................................11

Fed. R. Civ. P. 12(b)(1)...........................................................................7, 9

Fed. R. Civ. P. 12(b)(6)...........................................................................9, 10

Fed. R. Civ. P. 12(c)........................................................................... 7, 9, 10

Fed. R. Evid. 201(c)(2) ...........................................................................5

Fed. R. Evid. 201(d)...........................................................................5

16 Tex. Admin. Code § 24.245(f)(1)(E)(iii) ..................................................... 30, 31

**Other Authorities**

H. Comm. on Nat. Res., B. Analysis, Tex. S.B. 573,
   82nd Leg., R. Sess. (C.S.S.B. 573, May 23, 2011) .............................................13

Tex. Pub. Util. Comm'n, Docket No. 51979, *Order*, Item No. 51 ...........................5

## JURISDICTIONAL STATEMENT

This Court has jurisdiction over this appeal under 28 U.S.C. § 1291. Dobbin brought claims under 28 U.S.C. §§ 2201 and 2202, 7 U.S.C. § 1926(b), and 42 U.S.C. § 1983, asserting jurisdiction under 28 U.S.C. § 1331. The district court entered final judgment on April 14, 2025, dismissing Dobbin's claims on jurisdictional grounds. ROA.464-466. Dobbin timely filed a notice of appeal on April 29, 2025. ROA.467-470.

**STATEMENT OF THE ISSUES**

This appeal involves five issues for the Court to decide:

1.    Did the District Court err in finding that Dobbin had no "legal right to serve" the SIG Magnolia Property?

2.    Did the District Court err in holding that Dobbin had no redressable injury?

3.    Does § 1926(b) bar the prospective effect of decertification orders on a federally-indebted borrower's service area?

4.    Is the "legal right to serve" under *Green Valley* determined when the federally-indebted borrower secures monopoly protections under § 1926(b), or when some event purports to change the borrower's monopoly territory?

5.    Did the District Court err in applying *Dobbin I* to all of Dobbin's claims against a competing water provider?

2

<u>STATEMENT OF THE CASE</u>

### A.   <u>Statement of Facts</u>

Dobbin Plantersville Water Supply Corporation (Dobbin) is a rural, nonprofit water provider in Montgomery and Grimes Counties, Texas. ROA.223, 227. Dobbin serves customers located in its Certificate of Convenience and Necessity (CCN) No. 11052. ROA.223. In 1997, Dobbin secured two 40-year federal loans under 7 U.S.C. § 1926(a), pledging to the United States Department of Agriculture (USDA) Dobbin's future accounts receivable and customers in its service area. ROA.223, 309. *See also Dobbin Plantersville Water Supply Corp. v. Lake*, 108 F.4th 320, 323 (5th Cir. 2024) (*Dobbin I*) ("When Dobbin took out two forty-year loans in 1997 from the USDA through the § 1926(b) lending program, the areas in question were rural or semi-rural. Both loans remain outstanding."). Dobbin remains federally indebted on both loans and has been throughout all times relevant to this dispute. ROA.223.

On March 30, 2019, real estate developer SIG Magnolia L.P. (SIG Magnolia) purchased land in Dobbin's CCN (SIG Magnolia Property). ROA.223. Around June 2019, SIG Magnolia assisted in the formation of Appellee Montgomery County Municipal Utility District Number 180 (MUD 180), a municipal utility district created for the purpose of providing water to homes constructed on the SIG Magnolia Property in Dobbin's CCN. ROA.224, 410-411.

But MUD 180 could not legally serve the SIG Magnolia Property since Dobbin's CCN "blocks other providers from servicing the area" under Texas law. ROA.464. To solve this problem, SIG Magnolia filed (in April 2021) a streamlined expedited release petition (SER Petition) with the Public Utility Commission of Texas (PUCT), seeking release of the SIG Magnolia Property from Dobbin's CCN under Texas Water Code § 13.2541. ROA.259-262. In its SER Petition, SIG Magnolia represented that MUD 180 had already "been created to serve as the retail water service provider for" the SIG Magnolia Property. ROA.264. Dobbin sought to enjoin the SER Petition and sued the PUCT and SIG Magnolia on July 9, 2021, in the Western District of Texas, Austin Division, in the case styled *Dobbin Plantersville Water Supply Corp. v. Peter Lake, et al.*, Case No. 1:21-CV-00612-RP (WDTX Case). ROA.282.

Although SIG Magnolia never requested water from Dobbin, Dobbin has and had sufficient nearby infrastructure to serve the SIG Magnolia Property within a reasonable time after a request for service, consistent with *Green Valley*. ROA.224-228. Dobbin also has the legal right to serve the SIG Magnolia Property under its CCN and its vested rights under § 1926(b). ROA.223, 228.

While SIG Magnolia's SER Petition was pending, MUD 180 and AUC Group, Inc. (AUC) entered into an agreement for AUC to construct water infrastructure for MUD 180. ROA.224. MUD 180 would lease the infrastructure until it had the option

4

to purchase after 7 years. ROA.224, 250-257. Two months later, on July 30, 2021, SIG Magnolia and MUD 180 entered into a development agreement for MUD 180 to provide water to customers on the SIG Magnolia Property. ROA.238.

On January 31, 2022, the PUCT issued an order granting SIG Magnolia's SER Petition (Decertification Order), purporting to release the SIG Magnolia Property from Dobbin's CCN. ROA.457; Tex. Pub. Util. Comm'n, Docket No. 51979, *Order*, Item No. 51.[1]

MUD 180 was developing, constructing, and leasing the water infrastructure from AUC before the Decertification Order and is now using the leased facilities to provide water service to customers located on the SIG Magnolia Property. ROA.224. And as early as August 12, 2022, MUD 180 was receiving utility service applications from potential customers. ROA.224.

### B.    **Procedural Background**

The procedural background of this case is uncomplicated. However, out of an abundance of caution, and to provide as much context as possible, Dobbin includes the procedural history of its prior WDTX Case against the PUCT and SIG Magnolia.

On July 9, 2021, Dobbin sued the PUCT and SIG Magnolia to enjoin the PUCT from proceeding with SIG Magnolia's SER Petition or prospectively

---

[1] PUCT filings are a public record, and Dobbin asks the Court to take judicial notice of them, and any other public filings referenced in this Brief under Federal Rule of Evidence 201(c)(2). See also Fed. R. Evid. 201(d) ("The court may take judicial notice at any stage of the proceeding.").

enforcing it. ROA.282. Dobbin sought a preliminary injunction (post-decertification), which the Honorable Judge Pitman denied by text order on October 14, 2022. ROA.284. Dobbin, the PUCT, and SIG Magnolia then cross-moved for summary judgment, and Judge Pitman dismissed Dobbin's claims for lack of subject matter jurisdiction on March 6, 2023. ROA.285. Dobbin appealed, but Judge Pitman's jurisdictional ruling was upheld by the Fifth Circuit on July 16, 2024. *Dobbin I*, 108 F.4th at 329.

While the *Dobbin I* Appeal was pending, Dobbin filed this lawsuit against MUD 180 on April 28, 2023 (MUD 180 Case). ROA.223-224. Dobbin alleged it made service available to the SIG Magnolia Property under § 1926(b) and the *Green Valley* test. ROA.223-226.

Dobbin sued MUD 180 under § 1926(b), asserting that once § 1926(b) protections attached to Dobbin's territory (due to its § 1926(a) qualifying loans), any local or state action interfering with Dobbin's territory was preempted. ROA.227-228. Dobbin sued for damages under 42 U.S.C. § 1983. ROA.229-230. Dobbin sought declaratory relief under 28 U.S.C. §§ 2201 and 2202, including that the Decertification Order and Texas Water Code § 13.2541 were preempted or invalidated by § 1926(b). ROA.229-230. Dobbin sought injunctive relief prohibiting MUD 180 from serving customers in Dobbin's federally protected territory.

ROA.231-232. Dobbin sought a constructive trust over MUD 180's water infrastructure in Dobbin's territory. ROA.231-232.

On August 1, 2023, the Honorable Judge Rosenthal stayed and administratively closed the MUD 180 Case pending disposition of the *Dobbin I* Appeal. ROA.303. After the *Dobbin I* opinion, Judge Rosenthal issued a new scheduling order for briefing the effect of *Dobbin I*. ROA.367. On December 20, 2024, MUD 180 moved to dismiss Dobbin's suit under Federal Rule of Civil Procedure 12(b)(1) (lack of subject-matter jurisdiction) and 12(c) (failure to state a claim). ROA.368-400. The motion and response were fully briefed. ROA.401-433, 435-452.

Judge Rosenthal set the Motion to Dismiss for hearing on April 16, 2025. ROA.454. But two days before the hearing, Judge Rosenthal issued a Memorandum and Order (Order) granting MUD 180's Motion and dismissing Dobbin's claims with prejudice. ROA.455-465.The District Court's Final Judgment was entered that same day. ROA.466. Dobbin timely filed a Notice of Appeal. ROA.467-474.

Separately, Dobbin appealed the Decertification Order on state law grounds to the Travis County District Court, and that appeal remains pending in *Dobbin Plantersville Water Supply Corp. v. SIG Magnolia, L.P.*, D-1-GN-22-000951 (261st Dist. Ct. Travis County Tex., Feb. 25, 2022). ROA.411.

## SUMMARY OF THE ARGUMENT

Congress enacted § 1926(b) to protect rural providers like Dobbin, and the federal government's interest in having its loans repaid. The District Court erred in failing to interpret the statute consistent with that goal.

The District Court also erred by ruling on the merits on Dobbin's "legal right to serve" under *Green Valley* while simultaneously denying its own jurisdiction. The District Court could not address the "legal right to serve" without impliedly rejecting the preemptive effect of § 1926(b) on the Decertification Order or § 13.2541. This implied ruling was error; § 1926(b) invalidates the Decertification Order and § 13.2541. Dobbin's "legal right to serve" attached when Dobbin borrowed federal funds in 1997 and cannot be extinguished by the Decertification Order so long as Dobbin is providing service.

The District Court also erred by ignoring other jurisdictional bases for Dobbin's claims. Dobbin asserted damages under § 1983, equitable relief through a constructive trust, and declaratory relief that, if granted, would have redressed injuries to Dobbin. The District Court's reliance on *Dobbin I* was wrong, as that case addressed only prospective relief against the PUCT, and not prospective (or any other) relief against a competing provider like MUD 180.

The District Court's decision perversely incentivizes states to undermine § 1926(b) protection. If upheld, it also creates pointless tension between *Green*

8

*Valley* and *Dobbin I* on redressability, and muddies Fifth Circuit law on Article III standing.

Finally, there are no unstated grounds in the District Court Order that support affirmation. Accordingly, this Court should reverse and remand.

## ARGUMENT

### I.    STANDARD OF REVIEW

Review of a Federal Rule of Civil Procedure 12(b)(1) motion to dismiss for lack of subject matter is reviewed *de novo*. *T. B. by & through Bell v. Nw. Indep. Sch. Dist.*, 980 F.3d 1047, 1050–51 (5th Cir. 2020). The reviewing court takes "the well-pled factual allegations of the complaint as true and views them in the light most favorable to the plaintiff." *Id*.

"A Rule 12(c) motion for judgment on the pleadings is evaluated using the same standard applicable to a Rule 12(b)(6) motion seeking dismissal for failure to state a claim." *Rafuse v. Advanced Concepts & Techs., Int'l, LLC*, 2024 WL 428736, 2024 U.S. App. LEXIS 24372, at *3 (5th Cir. 2024) (citing *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)).  A Rule 12(b)(6) motion may be granted only if the court determines beyond doubt that the plaintiff cannot prove any plausible set of facts that support the claim and which would justify relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). A Rule 12(c) motion may only be brought after the pleadings are closed. Fed. R. Civ. P. 12(c); *Great Plains Tr. Co. v. Morgan Stanley*

*Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). Pleadings are closed after the filing of the plaintiff's complaint and the defendant's answer, and a 12(c) motion filed before the defendant answers should be converted to a 12(b)(6) motion. *OPF Enters. v. Evanston Ins. Co.*, 4:31-CV-01835, 2021 WL 4710948, 2021 U.S. Dist. LEXIS 194812, at *4 (S.D. Tex. 2021).

Because of the harshness of dismissal under 12(c), courts should generally "afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains*, 313 F.3d at 329. Dobbin requested the opportunity to amend its pleading to cure any defects, but the District Court's Order refused, reasoning that doing so would be "futile." ROA.465.

## II.   7 U.S.C. § 1926(b) AND TEXAS WATER CODE § 13.2541

"Congress enacted § 1926(b) to "ensure that federally indebted utilities repay their loans[.]" *Green Valley*, 969 F.3d at 475. Section 1926(b) states:

> The service provided or made available through any such association **shall not be curtailed or limited by inclusion** of the area served by such association within the boundaries of any municipal corporation or other public body, **or by the granting of any private franchise** for similar service within such area during the term of such loan; **nor shall the happening of any such event be the basis of requiring such association to secure any franchise, license, or permit** as a condition to continuing to serve the area served by the association at the time of the occurrence of such event.

7 U.S.C. § 1926(b) (emphasis added).

Under § 1926(b), a water utility "that receives a federal loan for water or wastewater infrastructure enjoys monopoly protection for 'the service provided or made available' by the utility during the term of the loan." *Dobbin I*, 108 F.4th at 323. The purpose of the monopoly protection is two-fold: "1) to encourage rural water development by expanding the number of potential users of such systems, thereby decreasing the per-user cost, and 2) to safeguard the viability and financial security of such associations [and the USDA's loans] by protecting them from nearby competitors. *City of Madison v. Bear Creek Water Ass'n*, 816 F.2d 1057, 1060 (5th Cir. 1987); *see also* 7 C.F.R. § 1782.14(a) ("[§] 1926(b) was enacted to protect the service area of Agency borrowers with outstanding loans... from loss of users due to actions or activities of other entities in the service area of the Agency financed system" to prevent "other entities" from "extend[ing] service to users within the service area, thereby undermin[ing] the purpose of the congressionally mandated water and waste loan and grant programs and jeopardiz[ing] the borrower's ability to repay its Agency debt").[2]

"The service area of a federally indebted water association is sacrosanct. Every federal court to have interpreted § 1926(b) has concluded that the statute

---

[2] The USDA has deputized borrowers with "[r]esponsibility for initiating action in response to" prohibited encroachments. 7 C.F.R. § 1782.14(b).

should be liberally interpreted to protect [USDA-indebted] rural water associations from municipal encroachment." *N. Alamo Water Supply Corp. v. City of San Juan*, 90 F.3d 910, 915 (5th Cir. 1996); *see also Post Oak Special Util. Dist. v. City of Coolidge*, 1996 U.S. App. LEXIS 42741, at *3–4 (5th Cir. 1996) ("Courts have broadly interpreted [§ 1926(b)]."). Section 1926(b) thus creates a "bright-line rule" prohibiting competition against a federally-indebted borrower. *See also City of Madison*, 816 F.2d at 1059 ("[I]t was Congress, and not this Court, that literally proscribed interference by competing facilities with the rural water authority 'during the term of said loan.'").

Competing providers cannot encroach through franchises, new or additional permit requirements, or any similar means. *See, e.g., Glenpool Util. Serv. Auth. v. Creek Cnty. Rural Water Dist., No. 2*, 861 F.2d 1211, 1214 (10th Cir. 1988) (agreeing with *City of Madison* that competition is barred). Nor can any other provider, "whether public or private," be "substituted for or displac[e] the service of [an indebted] rural water association." *Post Oak*, 1996 U.S. App. LEXIS 42741 at **5–6. Because of this bright-line prohibition, "where the federal § 1926 protections have attached, § 1926 preempts local or 'state law [that] can be used to justify a [competing provider's] encroachment upon disputed area in which an indebted association is legally providing service under state law.'" *Pittsburg Cnty. Rural Water Dist. No. 7 v. City of McAlester*, 358 F.3d 694, 715 (10th Cir. 2004) (quoting

*Rural Water Sys. #1 v. City of Sioux Ctr.*, 967 F. Supp. 1483, 1529 (N.D. Iowa 1997)). Thus, if "a local or state action encroaches upon the services provided by a protected water association, the local or state act is invalid" under the Supremacy Clause. *Pittsburg Cnty*, 358 F.3d at 715.

An indebted rural water provider has "provided or made [service] available" under § 1926(b) if it "(1) has adequate facilities to provide service to the relevant area within a reasonable time after a request for service is made and (2) has the legal right to provide service." *Green Valley*, 969 F.3d at 465. At issue in this case is whether "the legal right to provide service" is measured after decertification (as implied by the District Court's Order), or at the time the federally-indebted borrower secures § 1926(b) monopoly protection.

Under the prior *N. Alamo* regime, a rural water district satisfied § 1926(b)'s "provided or made service available" requirement merely by having a CCN. This afforded water providers significant leverage in negotiations with landowners and competing providers. But this leverage created frustration with § 1926(b) borrowers purportedly "charg[ing]...exorbitantly high fees" for release from their CCNs; in response, the Texas Legislature enacted Texas Water Code § 13.2541 in 2011, authorizing landowners to petition the PUCT for "streamlined expedited release" from a water provider's CCN. ROA.409; H. Comm. on Nat. Res., B. Analysis, Tex. S.B. 573, 82nd Leg., R. Sess. (C.S.S.B. 573, May 23, 2011). Section 13.2541

13

mandates that the PUCT grant the SER Petition within 60 days from the filing of the SER Petition and prohibits the PUCT from "deny[ing] the petition based on the fact that the [existing CCN] holder is a borrower under a federal loan program." ROA.409; Tex. Water Code §§ 13.2541(c)–(d).

After the PUCT decertifies territory, a federally-indebted borrower no longer has a redressable injury or standing to seek injunctive relief *against the PUCT*. *Dobbin I*, 108 F.4th at 328 ("The district court correctly dismissed Dobbin's claim for injunctive relief against the PUC for lack of standing."). *See also Crystal Clear Special Util. Dist. v. Jackson*, 142 F.4th 351, 368 n.9 (5th Cir. 2025) (holding that in light of *Dobbin I*, "a federally indebted provider's § 1926 suit against the PUC must precede a decertification ruling, lest redressability is lost due to an impermissibly retroactive remedy.").[3] But a federally-indebted borrower may seek prospective and declaratory relief against a competing provider post-decertification. *Green Valley*, 969 F.3d at 473 (holding that district court had jurisdiction to evaluate on the merits whether § 1926(b) prohibited continuing conduct "from [competing provider's] pursuit of relief arising from the PUC's [decertification] orders.") (cleaned up).

---

[3] Importantly, *Dobbin I* did not address jurisdiction over a borrower's claims against a competing provider at all. *Dobbin I*, 108 F.4th at 323–25.

## III. THE DISTRICT COURT ERRED BY GRANTING MUD 180'S MOTION TO DISMISS

### A. The District Court's Order.

The gravamen of the District Court's Order was that Dobbin, "[u]ndeterred" by the *Dobbin I* Appeal, was "simply attempting to get around the Fifth Circuit's prior ruling." ROA.458, 463. The District Court said it would have to find the Decertification Order "void" to afford Dobbin relief after decertification, and could not do so under *Dobbin I*. ROA.463. Distinguishing *Green Valley*, the District Court held that *Green Valley* "did not address whether [prospective relief against the PUCT] would actually redress the plaintiff's injuries." ROA.464. *But see Green Valley*, 969 F.3d at 472–73 (holding that prohibiting PUCT from allowing another utility to serve any area post-decertification "would redress an ongoing violation of Green Valley's rights under § 1926(b)—curtailment of territory where Green Valley maintains it provided service or made it available—without requiring any money to be taken from the state's coffers.").

The District Court disagreed that Dobbin could block MUD 180's reliance on the decertification since "MUD 180 has no power to 'enforce' the decertification order." ROA.464. "Instead," the Court reasoned, the Decertification Order merely made "it possible for MUD 180 to offer water services to [the SIG Magnolia Property] since Dobbin's Certificate no longer" blocked MUD 180 "from servicing the area." ROA.464. Second, the District Court concluded that even if it enjoined

15

MUD 180 from serving the SIG Magnolia Property, Dobbin would still be barred from serving the SIG Magnolia Property because of the Decertification Order. ROA.464. Thus, the District Court held that Dobbin had no redressable injury, the Court therefore lacked jurisdiction to consider Dobbin's claims, and Dobbin could not replead around the problem. ROA.464-465.

The District Court did not engage with any preemption analysis. It did not wonder whether damages under § 1983 would redress injuries to Dobbin. It never mentioned whether Dobbin "would benefit in a tangible way from the court's" issuance of a constructive trust over MUD 180's water infrastructure. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 n.5 (1998) (quoting *Warth v. Seldin*, 422 U.S. 490, 508 (1975)). Instead, the District Court only addressed Dobbin's injunctive and declaratory claims, which it summarily rejected on the grounds that Dobbin no longer had a CCN and thus no legal right to serve. That puts the cart before the horse. Dobbin sought a merits-based determination that it had the "legal right to serve" under *Green Valley* because the Decertification Order and § 13.2541 were preempted by § 1926(b). The Court exercised just enough jurisdiction to impliedly reject Dobbin's preemption claims, but not enough jurisdiction to address any other merits. ROA.462.[4]  This was error.

---

[4] For example, in footnote 2, the District Court declined to address the other prong of the *Green Valley* test because "Dobbin fail[ed] to plead a legal right to provide service." ROA.462.

16

### B.    Dobbin Has the Legal Right to Serve.

### (1)    Section 1926(b) prevents the Decertification Order from interfering with Dobbin's vested monopoly rights.

"Under Texas law, a CCN gives a utility both (1) the exclusive right to serve the area within its CCN and (2) an obligation to serve every consumer within its certified area and render continuous and adequate service within the area[.]" *Green Valley*, 969 F.3d at 475 (cleaned up); *see also* Tex. Water Code § 13.242(a).

When Dobbin received its § 1926(a) loans, Dobbin had the legal right to serve the SIG Magnolia Property and all areas within its CCN. While the Fifth Circuit has not explicitly said *when* a water provider must have the "legal right to serve" to receive § 1926(b) protections, those rights vest when the provider secures federal debt. *See Xenia Rural Water Dist. v. City of Johnston*, 467 F. Supp. 3d 696, 704 (S.D. Iowa 2020) ("Xenia can only receive § 1926(b) protection for an area if it had a legal right under state law to serve that area at the time it assumed a qualifying loan."); *Rural Water Sys. No. 1*, 967 F. Supp. at 1525 (holding that a water provider "had no legal right or responsibility to provide water service" because it did not have a CCN at the time it received § 1926(a) loans).

The plain text of § 1926(b) supports this view. Section 1926(b) sets out three distinct prohibitions. First, it forbids the curtailment or limitation of "the area served by such association" by "inclusion within the boundaries" of any competing provider. 7 U.S.C. § 1926(b). Second, it separately prohibits the "granting of any

17

private franchise for similar service within such area during the term of such loan." *Id*. These prospectively prevent the Decertification Order from having any effect on Dobbin's vested monopoly rights.

Third and most importantly for the purposes of this appeal, § 1926(b) states: "nor shall *the happening of any such event* [inclusion within boundaries, or granting of franchise for similar service] *be* the basis of requiring such association to secure any franchise, license, or permit as a condition to continuing to serve the area served by the association *at the time of the occurrence of such event*." *Id*. (emphasis added). That is, § 1926(b) specifically contemplates that a decertification event might happen, but that "event" cannot serve as an on-going "basis of" (1) depriving Dobbin of its legal right to serve or (2) requiring Dobbin to secure a new franchise or CCN as a condition of service. This prohibition is both retrospective and prospective. It anticipates that some event may happen, but that its happening will not affect the borrower going forward.

The Decertification Order violated all three § 1926(b) restraints. First, the Decertification Order placed Dobbin's exclusive state-law territory into the territory of MUD 180. Before the Decertification Order, MUD 180 could not serve the SIG Magnolia Property because it was still in Dobbin's CCN. Tex. Water Code § 13.242(a). The District Court found that it was the "decertification order" that made "it possible for MUD 180 to offer water services to [SIG Magnolia] since

18

Dobbin's Certificate no longer block[ed] other providers from servicing the area." ROA.464.

Similarly, under state law MUD 180 is entitled to serve any area of the state so long as the area is not being lawfully furnished by another retail public utility (like Dobbin). Tex. Water Code § 13.242(a). The Decertification Order "grant[ed a] private franchise for similar service" to MUD 180, within Dobbin's service area, while Dobbin's debt remains outstanding. 7 U.S.C. § 1926(b).

Finally, the third prohibition removes all doubt. The District Court ignored it when reciting the statute. ROA.461. The District Court agreed that the Decertification Order was an event that "require[d]" Dobbin to secure "a Certificate [of Convenience and Necessity]" to continue serving the SIG Magnolia Property but failed to grapple with whether the Decertification Order was thus an "event" within the ambit of § 1926(b). ROA.464. Instead, the District Court held that the Decertification Order deprived Dobbin of the legal right to serve and deprived the District Court of jurisdiction.

The District Court's Order bypassed the merits under *Green Valley* by treating the *Green Valley* test's legal right to serve prong as a jurisdictional bar. Dobbin is and was challenging MUD 180's encroachment, which was made possible only by the Decertification Order. Dobbin claimed a vested and exclusive legal right to serve the area in Dobbin's CCN under § 1926(b), and pled that § 13.2541 and the

19

Decertification Order were preempted by federal law. *See, e.g., Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326 (2015) ("And, as we have long recognized, if an individual claims federal law immunized him from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted.").

The District Court could not have reached its "legal right to serve" holding without impliedly rejecting Dobbin's preemption claim. If the "legal right to serve" is determined at the time the water provider secures federal debt, Dobbin's monopoly territory cannot be curtailed or limited by any subsequent "event" that would allow a competing provider to serve the area, or prohibit Dobbin from serving the area, at the time of the "event." 7 U.S.C. § 1926(b). Thus, the District Court's Order implied that the "legal right to serve" is determined at some point on or after any "event" curtailing or limiting Dobbin's territory. The District Court should have exercised jurisdiction and made that implied ruling loudly on the merits. *Steel Co.*, 523 U.S. at 89 ("[T]he District Court has jurisdiction if 'the right of petitioners to recover under their complaint will be sustained if the Constitution and the laws of the United States are given one construction and will be defeated if they are given another[.]'") (quoting *Bell v. Hood*, 327 U.S. 678, 685 (1946)).

The Decertification Order was preempted, as any state law or act that undermines or conflicts with § 1926(b) is invalid. ROA.412. *E.g., Pittsburg Cnty.*

20

358 F.3d at 715 ("To the extent that a local or state action encroaches upon the service provided by a protected water association [under § 1926(b)], the local or state act is invalid."). Dobbin argued that § 13.2541 was preempted and thus any act made under it was *void ab initio*. ROA.415-416. A decertification order may be challenged (including against a competing provider) under § 1926(b) even if the underlying statute the order is based on is not preempted. *Green Valley*, 969 F.3d at 468, 473 (holding that federal borrower could pursue § 1926(b) claims against PUCT and competing provider even though it found no preemption of Tex. Water Code § 13.255). Though, for the reasons below, § 13.2541 is preempted by § 1926(b).

The District Court misinterpreted the relief sought by Dobbin. The District Court did not want to "find that the [Decertification Order was] void" since *Dobbin I* held that "the invalidation of a final agency order is inherently retrospective and, thus, impermissible under *Young*." ROA.463. *Young*[5] and *Dobbin I* involved claims against state actors. The reason retrospective relief is unavailable against a state actor is because of Eleventh Amendment immunity. *Green Valley*, 969 F.3d at 467, 471. That immunity protects "the state's coffers." *Id*. at 473.

Neither *Dobbin I* nor *Young* apply here. *Dobbin I* addressed claims against the state directly. MUD 180 is not a state actor entitled to Eleventh Amendment immunity. *Young* is an exception to Eleventh Amendment immunity. *Id*. at 471. *Mt.*

---

[5] *Ex parte Young*, 209 U.S. 123 (1908).

21

*Healthy City Sch. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977) ("The bar of the Eleventh Amendment to suit in federal courts extends to States and state officials in appropriate circumstances... but does not extend to counties and similar municipal corporations.").[6] Political subdivisions are liable for damages under § 1983. *Monell*, 436 U.S. at 690 ("Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief[.]"). The state's coffers are not implicated. MUD 180's infrastructure, and assets, were funded by a private developer, SIG Magnolia. No party has claimed that MUD 180 is entitled to Eleventh Amendment immunity.

Even so, finding that MUD 180 violated § 1926(b) would not require the District Court to void a state act. It would only require holding that MUD 180 could not rely on the Decertification Order to violate Dobbin's § 1926(b) rights, and that the Decertification Order did not affect Dobbin's legal right to serve the SIG Magnolia Property under *Green Valley*. Any concerns the District Court had over

---

[6] *See also*, *Tercero v. Tex. Southmost Coll. Dist.*, 989 F.3d 291, 297 (5th Cir. 2021) (holding that "political subdivision...could not...invoke constitutional sovereign immunity"); *Monell v. Dep't of Soc. Services*, 436 U.S. 658, 690 n.54 (1978) ("Nor is there any basis for concluding that the Eleventh Amendment is a bar to municipal liability."); *Miller v. Northwest Harris Cnty. MUD No. 24*, No. 4:19-CV-04240, 2020 WL 5632415, 2020 U.S. Dist. LEXIS 172004 at **4–9 (S.D. Tex. 2020) (holding that MUD was not entitled to Eleventh Amendment immunity under *Clark v. Tarrant Cnty.*, 798 F.2d 736 (5th Cir. 1986) factors).

voiding a state act could be addressed by narrowing the applicability of any order to MUD 180.[7]

> **(2) Section 1926(b) conflict preempts Tex. Water Code § 13.2541 and the Decertification Order, and both are *void ab initio*.**

Several courts have already held that § 13.2541 conflicts with § 1926(b). *See Dobbin Plantersville Water Supply Corp. v. Lake*, No. 1:21-CV-00612-RP, 2022 U.S. Dist. LEXIS 123567, at *13 (W.D. Tex. July 13, 2022), *R. & R. adopted*, 2022 U.S. Dist. LEXIS 184887 (W.D. Tex. Aug. 4, 2022) ("Dobbin argues that compliance with both § 1926(b) and §§ 13.2541(d) is impossible because the standards for decertification differ and are mutually exclusive. The Court agrees.").[8] Because § 1926(b) preempts § 13.2541, § 13.2541 is *void ab initio*. *See Antilles Cement Corp. v. Fortuno*, 670 F.3d 310, 323 (1st Cir. 2012) ("Consequently, state laws that 'interfere with, or are contrary to the laws of Congress' are void ab initio.") (cleaned up); *Alexander v. Cockrell*, 294 F.3d 626, 630 (5th Cir. 2002) ("An unconstitutional statute is *void ab initio*, having no effect as though it had never been passed.").

---

[7] As § 1926(b) specifically contemplates that some "event" will have no prospective effect on a borrower's monopoly territory, the order can simply track the language of § 1926(b).

[8] *See also, Crystal Clear Special Util. Dist. v. Marquez*, 316 F. Supp. 3d 965, 975–76 (W.D. Tex. 2018) (holding that the precursor to § 13.2541(d) rendered it "physically impossible" for the PUCT to apply state and federal law, and that provision prohibiting PUCT from considering federal indebtedness was preempted).

Since § 13.2541 and the Decertification Order were *void ab initio*, then MUD 180 is providing service to customers in Dobbin's CCN in violation of Texas Water Code § 13.242(a) and in violation of Dobbin's § 1926(b) rights. Because the Decertification Order is preempted and invalid, Dobbin never lost the legal right to serve the SIG Magnolia Property. The District Court erred by failing to address preemption before finding that Dobbin had no legal right to serve. Because the District Court impliedly rejected Dobbin's preemption argument, the case should be remanded so that the District Court can address preemption. *Crystal Clear*, 142 F.4th at 366–67 (finding that conflict preemption analysis would address "unanswered but important question of law" and remanding to district court to address conflict preemption).

## C.   The District Court Disregarded Independent Bases for Standing.

The District Court relied on *Dobbin I* to find that Dobbin did not have standing to assert a preemption claim against the PUCT because "Dobbin does not seek relief that would redress its injury…it lacks standing to assert a preemption claim under Article III." [9] *Dobbin I*, 108 F.4th at 328.

The MUD 180 Case is different from *Dobbin I*. Dobbin asserts the same preemption claim but has independent bases for standing and redressability. Dobbin

---

[9] Importantly, *Dobbin I* did not address standing under a declaratory judgment claim. 108 F.4th at 325, n.2. Here, Dobbin is appealing the trial court's denial of its declaratory relief; thus *Dobbin I* is inapplicable to Dobbin's declaratory relief claim.

24

sued for damages under § 1983. ROA.229. Dobbin sued for equitable relief through a constructive trust over MUD 180's water infrastructure. ROA.232. That relief, if granted, would redress Dobbin's injuries.

Dobbin also sued for injunctive and declaratory relief prohibiting MUD 180 from serving in Dobbin's CCN, even after decertification. ROA.230-231. That is, Dobbin sought relief prohibiting a competing provider from serving "any area decertified from" Dobbin's service area. *Green Valley*, 969 F.3d at 472–73. "That relief, if awarded, would redress on *ongoing* violation of" Dobbin's rights under § 1926(b). *Id*. at 473 (emphasis added). "That is enough to satisfy the straightforward inquiry the Supreme Court has commanded us to employ, regardless of whether" Dobbin "is right on the merits." *Id*. (cleaned up).The District Court failed to evaluate Dobbin's preemption claim, or wrestle with Dobbin's separate redressable injuries against a competing provider.

Dobbin has standing and a redressable injury against competing providers if they are acting under or benefitting from a preempted statute. *Time Warner Cable, Inc. v. Hudson*, 667 F.3d 630, 636 n.9 (5th Cir. 2012) (holding that cable company had standing and redressable injury to assert declaratory and injunctive relief claims against competitors based on preempted statute). As far as preemption is concerned, Dobbin had standing to seek prospective injunctive relief against the further enforcement or effect of state actions so long as any violation of federal law is

25

"ongoing[.]" *Verizon Maryland, Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). Dobbin has alleged that MUD 180's violation of § 1926(b) is ongoing, and MUD 180 defended itself based on the present and ongoing effect of the Decertification Order. ROA.418. The District Court agreed that the ongoing effect of the Decertification Order deprived Dobbin of a legal right to serve. ROA.463. An order invalidating the ongoing effect of the Decertification Order would redress an injury to Dobbin.

For Dobbin's declaratory judgment claim, Dobbin is not limited to prospective relief. Dobbin has standing to assert retroactive invalidity of past preempted state acts. *Verizon* 535 U.S. at 646 (holding that "declaration of the *past*, as well as the *future*, ineffectiveness of the Commission's action" was permissible declaratory relief so long as it did "not impose *upon the State*" any monetary loss). *Dobbin I* did not address declaratory relief at all, so it cannot have foreclosed any declaratory relief Dobbin seeks against MUD 180. The District Court erred in relying on *Dobbin I* in finding that Dobbin had no redressable injury against MUD 180.

26

## IV. **THE DISTRICT COURT'S ORDER UNDERMINES THE CONGRESSIONAL INTENT OF § 1926(B) AND CREATES CONFLICT BETWEEN *GREEN VALLEY* AND *DOBBIN I.***

The District Court's Order creates a quagmire in federal law and § 1926(b) jurisprudence that will be difficult to untangle. For that reason alone, it should be reversed.

*Green Valley* held that, post-decertification, injunctive and declaratory relief prohibiting the enforcement of a PUCT order that "allow[ed] another utility to serve any area decertified...would redress an ongoing violation of" a borrower's "rights under § 1926(b)[.]" *Green Valley*, 969 F.3d at 473. But *Dobbin I* reasoned that *Green Valley* "did not address... whether the prospective relief identified for purposes of the *Young* exception would redress the plaintiff's injuries." *Dobbin I*, 108 F.4th at 327.[10] It is simple to reconcile *Dobbin I* with *Green Valley*. The former merely held that a borrower had no remedy *against the PUCT* pre-decertification, and must chase remedies elsewhere post-decertification. In *Green Valley*, the competing provider was a defendant. Here, also, the competing provider is a defendant.

*Dobbin I* is impossible to reconcile with the District Court's Order. It cannot be that *Dobbin I* was correct and the District Court Order is correct. Upholding both decisions vitiates a federal spending clause statute and federal program intended to protect the public fisc and taxpayer funded loans. *Green Valley*, 969 F.3d at 475

---

[10] *Young* has nothing to do with Dobbin's claims against MUD 180. *Infra* Sec. III.B.(1) above.

("To ensure that federally indebted utilities repay their loans, Congress enacted a provision protecting utilities from curtailment and encroachment by municipalities and other public bodies."). If *Dobbin I* is correct, then water providers can only sue the PUCT to prevent the PUCT from curtailing or limiting the provider's CCN (a § 1926(b) violation) if the provider quickly secures from a federal or state district court injunctive relief against the PUCT *before* the PUCT issues its decertification order. If the District Court's Order is also correct, then that same provider has no standing to sue the competing water provider after the PUCT issues a decertification order.

There is only one way to untangle this mess. *Dobbin I* cannot be reconciled with the District Court's order. If a decertification by the PUCT deprives Dobbin of its "legal right to serve," and accordingly deprives Dobbin of relief against an encroaching provider, then Dobbin must have had a redressable injury against the PUCT in *Dobbin I*. Put differently, if the decertification deprives Dobbin of its "legal right to serve" under *Green Valley*, then *Dobbin I* was wrongly decided. The injury Dobbin sought to redress in *Dobbin I* was dismissal in this lawsuit. Dobbin predicted that post-decertification, "competitors will insist that Dobbin cannot invoke the *Green Valley* test." Brief of Appellant at pp. 30–31, *Dobbin Plantersville Water Supply Corp. v. Lake*, No. 23-50215 (5th Cir. July 16, 2024). That is exactly what happened here.

But *Dobbin I* can reconcile with *Green Valley*, so long as the District Court's Order is reversed and *Dobbin I* is properly limited to its holding. Dobbin may not have a redressable, post-decertification injury "*against the PUC*,"[11] but it still has standing to directly challenge a competing provider's invasion of Dobbin's federally-protected territory.

Further, under the *Green Valley* regime, decertification was no impediment to standing, and parties could pursue federal relief in an orderly manner. Now, *Dobbin I* mandates that prudent water districts seek immediate, extraordinary injunctive relief through temporary restraining orders and preliminary injunctions. *Crystal Clear*, 142 F.4th at 366 n.9 ("In this way, *Dobbin* offers a lesson on timing, indicating that a federally indebted provider's § 1926 suit against the PUC must precede a decertification ruling, lest redressability is lost due to an impermissibly retroactive remedy."). This does the system no favors. Should the Court uphold the District Court's Order, that urgency will only increase, straining the resources of § 1926 borrowers (and the PUCT, and competing providers, and federal and state courts) forever trying to keep up with streamlined expedited release petitions.

This is not merely an issue of timing. While federally-indebted borrowers can seek injunctive relief, they may not be entitled to that extraordinary remedy. Borrowers should not have less federal rights than non-borrowers. Texas could also

---

[11] *Crystal Clear*, 142 F.4th at 366 n.9.

29

vitiate any chance at injunctive relief. Right now, federally-indebted borrowers receive notice of SER petitions. Tex. Water Code § 13.2541(b-1). But that provision was only added in 2023, and it can be repealed.

## V.    THE DISTRICT COURT ERRED IF IT RELIED ON UNSTATED GROUNDS

MUD 180 moved to dismiss on broader grounds than relied on by the District Court. The District Court avoided those arguments by finding the Court lacked jurisdiction. To the extent the District Court relied on other grounds implicitly, it erred. MUD 180 urged the District Court to abstain under *Burford* and *Pullman*.[12] ROA.386-392. Dobbin responded. ROA.422-429. Dobbin incorporates by reference those arguments here as if fully set forth.

MUD 180 argued that Dobbin's practice of requiring a landowner to fund infrastructure meant Dobbin had not made service available under § 1926(b). ROA.395-396. The only Circuit to squarely address the issue has rejected MUD 180's argument. *Deer Creek Water Corp. v. City of Okla. City*, 82 F.4th 972, 975 (10th Cir. 2023) ("[N]othing in [§ 1926(b)] or caselaw supports stripping a federally-indebted rural water association of § 1926(b) protection solely because it places a burden of property development (improving and expanding existing water-service infrastructure) on the landowner seeking to develop property."). This practice is

---

[12] *Burford v. Sun Oil*, 319 U.S. 315 (1943); *R.R. Comm'n of Tex. v. Pullman Co.,* 312 U.S. 496 (1941).

common in Texas. Tex. Water Code § 13.254(a-1)(3)(C) (conditioning decertification on CCN holder requiring developer to pay costs that are "n*ot properly allocable* directly to the petitioner's service request") (emphasis added); 16 TAC § 24.245(f)(1)(E)(iii) (same); *Pub. Util. Comm'n of Tex. v. Sw. Water Services, Inc.*, 636 S.W.2d 262, 263 (Tex. App.—Austin 1983, *writ ref'd n.r.e.*) (noting that "[w]ater...utilities serving...rural areas normally acquire their facilities, particularly the water and sewer pipe mains and their connections to individual houses or businesses, from the developer of a subdivision" who will "normally incur the original cost of installing the pipe and setting up the system").

MUD 180 argued that Dobbin had failed to state a claim for a constructive trust. ROA.396-399. Dobbin responded. ROA.429-431. Dobbin incorporates by reference those arguments here as if fully set forth. In sum, the District Court erred to the extent it implicitly relied on any alternative bases for dismissal urged by MUD 180.

CONCLUSION

The District Court erred by dismissing Dobbin's claims. Dobbin asserted claims for damages, declaratory relief, and a constructive trust, all of which would redress injuries to Dobbin. Dobbin also sued for injunctive relief to prevent MUD 180 from relying on the Decertification Order to violate Dobbin's § 1926(b) rights.

Finally, Dobbin sought a declaration that § 1926(b) preempts § 13.2541. Each of Dobbin's claims afford an independent basis for standing and redressability.

Rather than engaging with Dobbin's claims, and redressability for each, the District Court narrowly applied the *Green Valley* test, a merits-based analysis, to hold that Dobbin lost the "legal right to serve" the SIG Magnolia Property after the Decertification Order was issued. This holding misapplies this Court's holding in *Dobbin I* and vitiates a federally-indebted water provider's ability to enforce its § 1926(b) rights. The effect: Dobbin (1) cannot prevent the PUCT from issuing the Decertification Order without using extraordinary remedies (like a preliminary injunction), (2) cannot seek the *Green Valley* prospective injunctive relief against the PUCT after the Decertification Order, *and* (3) cannot pursue its § 1926(b) claims against the encroaching competing water provider after the Decertification Order. So a rural water provider must rush to district court hoping to secure extraordinary injunctive relief—potentially against a competing provider whose identity would be unknown at the time of the SER petition—*before* the PUCT beats them to the punch by issuing a decertification. Affirming the District Court's Order would not only undermine this Court's holding in *Green Valley*, it would also vitiate the protections Congress intended to provide to rural water providers like Dobbin by enacting § 1926(b) in the first place.

This Court can resolve the conundrum by reversing the District Court's Order and remanding Dobbin's case back to the District Court to proceed on the merits. Doing so would thread the needle of not disturbing *Dobbin I*, which limits the claims against the PUCT after decertification, while also not disturbing § 1926(b) jurisprudence (like *Green Valley*) that allows water providers to pursue claims against competing water providers who violate their § 1926(b) rights.

Respectfully submitted,

*/s/ William W. Allensworth*
William W. Allensworth (SBN 24073843)
wallensworth@allensworthlaw.com
Karly A. Houchin (SBN 24096601)
khouchin@allensworthlaw.com
Jordan T. Rhodes (SBN 24126750)
jrhodes@allensworthlaw.com
**ALLENSWORTH & PORTER, LLP**
303 Colorado St., Suite 2800
Austin, Texas  78701
(512) 708-1250 - Telephone
(512) 708-0519 – Facsimile

**ATTORNEYS FOR PLAINTIFF-APPELLANT DOBBIN PLANTERSVILLE WATER SUPPLY CORPORATION**

## CERTIFICATE OF SERVICE

This is to certify that on November 19, 2025 the foregoing Brief has been electronically filed with the Clerk of the Court for the United States Court of Appeals, Fifth Circuit, via the Court's CM/ECF system in compliance with Fed. R. App. P. 25(b) and (c) that will send notification of such filing to all counsel of record as noted below:

> Gunnar P. Seaquist
> Joshua Katz
> **BICKERSTAFF HEATH DELGADO ACOSTA LLP**
> 3711 S. MoPac Expwy, Bldg. 1, Suite 300
> Austin, TX  78746

*/s/ William W. Allensworth*
William W. Allensworth

## CERTIFICATE OF COMPLIANCE

1. This Brief complies with the type-volume limitation of Fed. R. App. P.32(a)(7)B) because this Brief contains 6,955 words, excluding the parts of the Brief exempted by Fed. R. App. P. 32(f) and 5th Cir. R. 32.1.

2. This Brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 and the type style requirements of Fed. R. App. P. 32(a)(6) because this Brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 MSO with a 14-point Times New Roman font.

*/s/ William W. Allensworth*
William W. Allensworth